[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action commenced by the plaintiff husband on September 27, 1999, seeking a dissolution of marriage on the ground of irretrievable breakdown. During the trial, held on May 23, 2001, testimony was offered by the plaintiff, the defendant, and two real estate appraisers. In addition, several documents were entered into evidence. Based upon a careful review of the evidence, as well as an assessment of the credibility of the witnesses, the court finds the following facts to have been proven.
Tore Askeland and Kathleen Davis were intermarried in East Hartford, Connecticut on November 5, 1994. The parties have resided continuously CT Page 7027 within the State of Connecticut for more than twelve months immediately proceeding this action. No children have been born of this marriage, and neither party has been the recipient of aid from the State of Connecticut. The court finds that it has jurisdiction over the parties and the marriage.
The plaintiff is a high school graduate who extended his education for one additional year in trade school studying heating and cooling systems. He has been employed for the past ten years by B.T. Lindsay 
Company as a heating and cooling mechanic. The plaintiff earns a gross weekly salary of $960. Other than a complaint of some back problems, the plaintiff states that he is in good health.
The defendant has a high school GED. She has worked as a bartender in a restaurant and has been employed as an office manager with a Hartford law firm November 1999. The defendant earns a gross weekly salary of $900 and appears to be in good health.
In 1995 the parties purchased a house located at 46 Hillside Avenue, Vernon, Connecticut for the sum of $114,900, paying for the house with a loan in the amount of $114,900, secured by a mortgage. Upon moving into the marital residence, together with the defendant's then ten-year-old daughter, they furnished and made improvements to the property. (Exhibit 2)
By 1999 the parties had accumulated credit card debts totaling approximately $18,000 resulting in the plaintiff seeking and obtaining relief from the bankruptcy court. It would appear that both parties contributed to the development of the debt. Although the plaintiff testified that he is unable to obtain credit due to the bankruptcy proceedings, the court notes that the plaintiff lists a current VISA credit card on his financial affidavit. He also lists a 1998 motor vehicle for which he apparently was able to secure a loan. The plaintiff's financial affidavit indicated that the vehicle has a value of $13,000 with a loan balance of $12,000.
The parties separated in March 1999 at which time the defendant and her daughter left the marital home and moved into an apartment. Thereafter, but prior to the filing of this action, the defendant quit claimed her interest in the marital home to the plaintiff The plaintiff then refinanced the existing mortgage in his own name. The current balance of his mortgage is approximately $111,000.
It is clear that both parties benefitted from this arrangement. The plaintiff gained sole title to the property and the defendant was released from the mortgage obligation which allowed her to obtain a mortgage loan CT Page 7028 in order to purchase another house in her own name. That is exactly what she did.
In October 1999, the defendant purchased a modest house located at 5 Charter Road, Ellington, Connecticut for $95,000. She earned the $2,700 down payment for the house by working a second job. She then obtained a loan for the balance, secured by a mortgage, together with an additional loan in the amount of $15,000, secured by a second mortgage. The defendant refinanced and combined the mortgages on her house in May 2001. The current balance of her mortgage is approximately $113,000.
There are few marital assets to be divided in this case. Basically, the plaintiff has a work related IRA retirement account valued at approximately $12,750 (Exhibit A), and each party owns a heavily mortgaged house, the market values of which are in dispute.
Thomas Crockett and Richard Merritt, licensed residential real estate brokers and appraisers, testified as to the fair market value of the residential properties owned by the parties. Their credentials and experience were stipulated to by the parties and both were determined to be experts in the area of residential real estate appraisals by the court.
Crockett, who testified for the plaintiff, conducted an appraisal of the 46 Hillside Avenue, Vernon, Ct. property on February 1, 2000. He determined the fair market value of the property as of that date to be $112,000. (Exhibit E) Crockett could not estimate or determine the present fair market value of the Vernon property as of the date of trial. He acknowledged that it was likely that the value had increased over the fifteen months between the date of the appraisal and the date of trial.
Richard Merritt, who testified for the defendant, conducted two appraisals of the 46 Hillside Road property. The first was in August 2000 at which time he determined the fair market value of the property to be $125,000. The second appraisal was conducted on May 14, 2001, at which time he determined the fair market value to be $132,500. (Exhibit 1) The August 2000 appraisal involved a complete inspection of the interior of the house. The May 2001 appraisal only included an inspection of the exterior of the residence as Merritt was unable to make arrangements with the plaintiff to view the interior. He assumed no significant interior changes had been made in the nine-month period between appraisals, and no evidence was presented to show that there had been any such changes. Merritt attributed the increase in fair market value to be a function of recent positive changes in the real estate market in the area.
The court finds the testimony of Richard Merritt to be credible. His CT Page 7029 explanation of the factors which he utilized in arriving at his determination of the fair market value of the Vernon residence was much more convincing than that of Thomas Crockett. Accordingly, the court finds the fair market value of the residence located at 46 Hillside Avenue to be $132,500 as of the date of trial.
Crockett also conducted an appraisal of the defendant's house at 5 Charter Road, Ellington, Ct. on March 9, 2001. He determined the fair market value of that property to be $122,500 as of that date. (Exhibit F) Merritt did not appraise the defendant's home at 5 Charter Road in Ellington. Consequently, the only relevant evidence concerning the true market value of that property are the testimony and appraisal report of Thomas Crocker, and the testimony of the defendant.
The defendant bought the Charter Road house in October 1999 for $95,000. She refinanced the mortgages on the house in May 2001, resulting in a current mortgage balance of $113,000. It is reasonable to draw an inference that the lending institution would be unlikely to refinance the property for an amount greater than its fair market value.
Crockett's testimony and appraisal report indicate that the house is in fair condition and that the house needs some work. "The interior needs considerable work — painting, flooring, some carpentry work, etc. The 2nd floor bath needs a new floor considerable tile work." (Exhibit F) He reported that a comparable house listed as a "handyman special" which sold for $105,000 in May 2000 was resold for $138,500 after being renovated (Exhibit F), and he concluded that the subject house can also be renovated with similar results. No evidence was presented concerning the cost of such renovations.
Since there is no credible evidence to contradict Crockett's appraisal, the court finds the true market value of the property located at 5 Charter Road, Ellington, Ct. to be approximately $122,500, as of the date of trial.
Although financial difficulties appear to have been a contributing factor resulting in this dissolution, there is no apparent single cause of the demise of this marriage. The plaintiff appears to be in a somewhat better financial position than the defendant; however it is clear that both parties have improved their respective financial circumstances since their separation, as reflected in their respective incomes and the appreciation of their property.
After taking into consideration all of the statutory criteria and factors contained in, but not limited to, § 46b-62, § 46b-81 and § 46b-82, and applying the same to the evidence, the court enters the CT Page 7030 following orders.
(1) A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint having been proven. The defendant may resume the use of her birth name: Kathleen A. Davis.
(2) Inasmuch as this has been a relatively short term marriage, and since both parties are gainfully employed and capable of adequately supporting themselves, neither party is awarded alimony
(3) The plaintiff is awarded sole title to and ownership of the property located at 46 Hillside Avenue, Vernon, Connecticut and shall be solely responsible for all debts and liabilities pertaining to said property.
(4) The defendant is awarded sole title to and ownership of the property located at 5 Charter Road, Ellington, Connecticut and shall be solely responsible for all debts and liabilities pertaining to said property.
(5) The plaintiff shall transfer to the defendant one-half of the value of his IRA pension/retirement fund (valued as of May 23, 2001) within 30 days of the date of this decision. Said transfer shall be by a QDRO which is to be prepared by plaintiff's counsel.
(6) Each party will be solely responsible for the debts listed on his and her respective financial affidavits dated May 23, 2001, and shall hold the other party harmless on the same.
(7) Except as otherwise provided by these orders, each party is awarded the assets shown on his and her respective financial affidavits free from any claims by the other.
(8) The parties shall retain the items of personal property currently in their possession.
(9) The plaintiff shall pay to the defendant's attorney the sum of $2000 for attorney fees within 60 days of this decision.
Counsel for the plaintiff shall prepare and submit to the court a judgement file within 30 days of the date of this judgement. Both the plaintiff's attorney and the defendant's attorney shall sign the judgement file.
Terence A. Sullivan CT Page 7031 Superior Court Judge